UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**SONIC FOUNDRY, INC.,**
        **Plaintiff,**

v.                                                    Case No.  13-CV-00087

**ASTUTE TECHNOLOGY, LLC,**
        **Defendant.**

---

## DECISION AND ORDER

Defendant Astute Technology, LLC ("Astute") sued a company known as Learners Digest International ("LDI") for patent infringement in the United States District Court for the Eastern District of Texas. LDI is a customer of Sonic Foundry, Inc. ("Sonic"), the plaintiff in the present case. Sonic, a Wisconsin corporation, created the products that are the subject of Astute's infringement claims against LDI. Following the commencement of the Texas suit, Sonic agreed to indemnify and defend LDI. Subsequently Sonic filed the present action under the Declaratory Judgment Act, 28 U.S.C., §§ 2201–02, seeking a declaration of non-infringement and invalidity regarding Astute's patents. Astute now moves to dismiss for lack of personal and subject matter jurisdiction or, in the alternative, to transfer the case to the Eastern District of Texas for consolidation with Astute's action against LDI. In this decision, I address the issue of personal jurisdiction as I conclude that it is dispositive.

To determine whether I have personal jurisdiction, I must first decide whether jurisdiction exists under Wisconsin's long-arm statute and then whether the assertion of

1

personal jurisdiction would be consistent with the constitutional requirement of due process. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005); *see also Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010) (holding that Federal Circuit law governs disputes over personal jurisdiction in patent cases). There are two types of personal jurisdiction: specific and general. *Rasmussen v. General Motors Corp.*, 335 Wis. 2d 1, 12–13 (2011). Specific jurisdiction exists when the litigation is related to or arises out of the defendant's contacts with a state. *Id.* General jurisdiction exists where a defendant has more substantial contacts with a state such that it is reasonable for a court within the state to hear any claim against the defendant. *Id.*; *see also uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425–26 (7th Cir. 2010) ("The standard for general jurisdiction is demanding because the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum."). Only general jurisdiction is at issue in this case because the suit is unrelated to Astute's contacts with Wisconsin.

Sonic argues that I have general jurisdiction over Astute under Wis. Stat. § 801.05(1)(d). Under this section, a Wisconsin court has general jurisdiction over a defendant who had taken up "local presence or status" within the state at the time the action was commenced by "engag[ing] in substantial and not isolated activities within the state." This section corresponds in a general way to the "doing business" statutes common in other states. *Nagel v. Crain Cutter, Co.*, 50 Wis. 2d 638, 646 (1971). And it requires not

just isolated contact with Wisconsin but "substantial activities" which are "continuous and systematic." *Travelers Ins. Co. v. George McArthur & Sons*, 25 Wis. 2d 197, 203 (1964). Generally, a defendant is subject to personal jurisdiction under this section of the long-arm statute if it "'solicit[s], create[s], nurture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state.'" *Druschel v. Cloeren*, 295 Wis. 2d 858, 864–65 (Ct. App. 2006) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992)).

Since § 801.05(1)(d) was "intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law," *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 59–60 (1970), Wisconsin courts consider the requirements of due process when applying it. Specifically, Wisconsin courts consider "1) the quantity of the [defendant's] contacts; 2) the quality of the contacts; 3) the source of the contacts and their connection with the cause of action; 4) the state's interest; and 5) the convenience of the parties." *FL Hunts, LLC v. Wheeler*, 322 Wis. 2d 738, 748 (Ct. App. 2009). A court must weigh these facts to determine whether it is reasonable to subject the particular nonresident defendant to Wisconsin litigation. *Nagel*, 50 Wis. 2d at 648.

Astute is a Virginia-based company which is in the business of recording live presentations and making them available for later online viewing. The patents at issue involve the methods it uses to capture, digitize and synchronize some of its presentations. Astute's contacts with Wisconsin are of four types. First, in August 2008, Astute recorded a presentation for a non-Wisconsin client which required Astute to be present in Wisconsin

for one day. Second, between August 2009 and July 2013, Astute received via its website 240 orders from Wisconsin residents for copies of recorded presentations. These orders represented 0.72% of Astute's sales of recorded presentation (during this period Astute processed a total of 33,155 orders). The Wisconsin orders came from 162 customers, which means 78 orders were from repeat customers. Direct email solicitations from Astute may have prompted some of the repeat orders because it sometimes sends automated emails to previous customers. It is possible that other Wisconsin residents viewed a presentation recorded by Astute without Astute's knowledge. This is because an organization that puts on a presentation sometimes distributes copies of it without assistance from Astute and does not provide Astute with a list of the recipients. Astute also offers some free content on its website that anyone can view. However, it does not track the addresses of the viewers.

Astute's third contact with Wisconsin occurred between August 2010 and May 2013 during which time it hosted a "Keep America Fishing" website for a Virginia-based organization, the American Sportfishing Association (the "ASA"). The website asked people living in upper Midwestern states, including Wisconsin, to protect the right to fish and donate to the ASA. Fourth, in June 2012, an agent of Astute contacted Sonic at its Wisconsin headquarters and offered to sell the patents presently at issue to Sonic.

Neither the fact that Astute recorded a presentation in Wisconsin in August 2008 nor that it offered to sell Sonic its patents in June 2012 is helpful to plaintiff. The question under § 801.05(1)(d) is whether Astute had substantial contacts with the State of Wisconsin in February 2013, when Sonic commenced this lawsuit. *See FL Hunts*, 322 Wis. 2d at 747–48 ("[I]t was error for the court to analyze [defendant's] contacts preceding the

commencement of the action . . . ."). The August 2008 and June 2012 events took place well before plaintiff filed its complaint, and neither event was part of an ongoing business relationship. That Astute hosted a website for the ASA until May 2013 is similarly unhelpful to plaintiff. This evidence proves only that Astute had an ongoing business relationship with the ASA, an organization based in Virginia. Although the Keep America Fishing website solicited donations from people in Wisconsin, no evidence indicates that Astute was the entity asking for or collecting the donations. All Astute did was provide technical support to the ASA. Thus, to resolve the issue of general jurisdiction, I need only consider whether Astute's distribution of copies of its recorded presentations to Wisconsin residents constituted "substantial" contacts that were "continuous and systematic."

As noted, I must consider the quantity and quality of Astute's contacts, the connection between Astute's contacts and Sonic's cause of action, the state's interest and the convenience of the parties. As to the quantity of Astute's Wisconsin contacts, between August 2009 and July 2013, Astute sold 240 copies of its recorded presentations to Wisconsin residents. This is a moderately substantial number, but there is no evidence indicating whether it represented a substantial dollar amount. And the quality of the contacts was very low. This is so because Astute typically does not promote its recorded content. Instead, it relies on the organizations that hire it to encourage their clients to purchase its products. Thus, most of Astute's Wisconsin sales resulted from the efforts of third-party organizations and not from Astute's own interactions with customers. The only orders that might have been generated by Astute's sales efforts are the 78 from repeat customers. This is because, as stated, Astute sometimes sends automated emails to previous customers. However, Astute's business relationship with such customers is limited

to sending an automated mass-marketing email and filling an order placed on its website. There is no evidence that any employee of Astute had any personal contact of any sort with any Wisconsin customer. *See Druschel*, 295 Wis. 2d at 866 (noting that "personal visits are the highest quality of contact" and that "[t]he next highest quality of contact is personal contact of another type").

The next factor weighs in favor of Astute because none of Astute's contacts with Wisconsin are related to the present lawsuit. The fourth and fifth factors are less important but slightly favor Sonic. Wisconsin has an interest in providing a forum for its citizens, and litigation in Wisconsin would be convenient to Sonic.

Considering all of the relevant factors, I conclude that the evidence does not support my exercising personal jurisdiction over Astute under the Wisconsin long-arm statute. The quality of Astute's contacts with its Wisconsin customers was so low that it does not justify subjecting Astute to general jurisdiction under § 801.05(1)(d). Astute's activities in Wisconsin were not extensive enough to enable me to conclude that Astute established a "local presence or status" within this state. *See also uBid*, 623 F.3d at 425–26 (noting that due process only allows a defendant to be subject to general jurisdiction in a state if it has "such extensive contacts with the state that it can be treated as present in the state for essentially all purposes"). Therefore, I will grant Astute's motion to dismiss for lack of personal jurisdiction.

Both parties filed their supplemental briefs discussing jurisdiction and portions of the attachments thereto under seal. I will give the parties 10 days to show good cause why these documents should remain sealed. If they do not respond by this deadline, I will order the clerk to unseal the documents. *See Cnty. Materials Corp. v. Allan Block Corp.*, 502

6

F.3d 730, 740 (7th Cir. 2007); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002).

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction (Docket #12) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties have 10 days from the date of this order to show cause why the documents filed under seal at Docket #25, 27 and 29 should remain sealed.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge